UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SARAH HAWKSHEAD,

      Plaintiff,

v.                               Case No.: 2:26-cv-2218

CHARLOTTE MOTORSPORTS, LLC d/b/a
DESTINATION POWER SPORTS,
a Florida limited liability company,

      Defendant.

_____/

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, SARAH HAWKSHEAD, by and through her undersigned counsel,

hereby sues Defendant, CHARLOTTE MOTORSPORTS, LLC d/b/a

DESTINATION POWER SPORTS, and alleges as follows:

### **JURISDICTION AND VENUE**

1. This is an action for damages and equitable relief for unlawful

employment practices brought under Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Florida Civil Rights Act

of 1992, Chapter 760, § 760.01 *et seq.,* Florida Statutes (the "FCRA").

2. This Court has original subject-matter jurisdiction over Plaintiff's

Title VII claims pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. §

2000e-5(f)(3). This Court has supplemental jurisdiction over Plaintiff's FCRA

claims pursuant to 28 U.S.C. § 1367(a) because those claims arise from the same common nucleus of operative fact as the federal claims.

3.     Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged herein were committed within this District, in Charlotte County, Florida, and Defendant conducts business in Charlotte County, Florida.

4.     Assignment to the Fort Myers Division is proper under Middle District of Florida Local Rule 1.04(b) because the events giving rise to this action occurred in Charlotte County, Florida.

## PARTIES

5.     Plaintiff, Sarah Hawkshead, is a female resident of Charlotte County, Florida, and was at all times material an "employee" of Defendant within the meaning of Title VII and the FCRA.

6.     Defendant, Charlotte Motorsports, LLC d/b/a Destination Power Sports ("Defendant" or "Destination"), is a Florida limited liability company that at all times material operated a powersports dealership located at 1110 Tamiami Trail, Punta Gorda, Charlotte County, Florida, where Plaintiff worked.

7.     At all times material, Defendant employed fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or

preceding calendar year, and was an "employer" within the meaning of 42 U.S.C. § 2000e(b) and section 760.02(7), Florida Statutes.

## SATISFACTION OF CONDITIONS PRECEDENT

8.   Plaintiff has satisfied all conditions precedent to bringing this action.

9.   Plaintiff timely filed a Charge of Discrimination against Defendant, EEOC Charge No. 510-2025-10560, which was dual-filed with the Florida Commission on Human Relations, on or about July 24, 2025, alleging discrimination on the basis of sex, sexual harassment, and retaliation.

10.   Plaintiff filed her Charge within 300 days of the unlawful employment practices alleged herein for purposes of Title VII, and within 365 days for purposes of the Florida Civil Rights Act. The sexual harassment and retaliation alleged constituted a continuing violation under both statutes, at least one act of which occurred within each applicable limitations period.

11.   More than 180 days elapsed following the dual-filing of Plaintiff's Charge without the Florida Commission on Human Relations having issued a determination, in accordance with section 760.11(8), Florida Statutes.

12.   On or about April 23, 2026, the EEOC issued Plaintiff a Notice of Right to Sue on the Charge. This action is commenced within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue.

13.     All other conditions precedent to this action have been performed, have occurred, or have been waived.

## GENERAL ALLEGATIONS

14.     Defendant hired Plaintiff on or about July 2, 2024, to work as a Parts Counter Salesperson at its Destination Power Sports dealership.

15.     Beginning on her first day of employment, July 2, 2024, and within approximately twenty minutes of Plaintiff beginning work on the sales floor, a male coworker identified as "Jason" (last name presently unknown to Plaintiff) made an unwelcome sexual advance toward Plaintiff. Jason thereafter subjected Plaintiff to unwelcome comments of a sexual nature.

16.     On or about July 3, 2024, Plaintiff told Jason that his comments were unwelcome, directed him to stop, and informed him that she was married. Plaintiff thereby rejected Jason's sexual advances. Jason's advances were sexual and romantic in nature and were entirely unwelcome. Plaintiff and Jason had never had, and never engaged in, any consensual, romantic, or sexual relationship of any kind.

17.     After and because of Plaintiff's rejection of his sexual advances, Jason's conduct toward Plaintiff escalated into a sustained and punitive campaign of hostility, false accusations, surveillance, and public humiliation directed at Plaintiff. Each such act of hostility, false accusation, surveillance, and humiliation

directed at Plaintiff thereafter, as further alleged below, was motivated by and undertaken in retaliation for Plaintiff's rejection of Jason's sexual advances, and therefore occurred because of Plaintiff's sex. Before Plaintiff rejected him, Jason had directed sexual and romantic attention toward Plaintiff; only after and because she rejected him did his conduct toward her turn punitive, hostile, and humiliating.

18.     At or near the outset of Jason's conduct, Plaintiff reported to her manager, Mike Robinson, that Jason was sexually harassing her and that his escalating mistreatment of her was in retaliation for her rejection of his sexual advances. Specifically, on or about her third workday of employment, after her shift and while Jason was outside the store, Plaintiff met with Robinson. Robinson asked Plaintiff about her personal background, which Jason had raised with him. Plaintiff told Robinson that Jason's hostility toward her, and his disclosure of her background, were in retaliation for Plaintiff having rejected a sexual advance that Jason made to her. Robinson was thereby made aware, at the outset of Plaintiff's employment, that the conduct Plaintiff opposed was sexual in nature and arose from her rejection of Jason's advance.

19.     On or about July 5, 2024, Jason loudly announced within the workplace, in the presence of Plaintiff and others, that he was an "outlaw" and that "they don't tolerate drugs."

20.    Beginning on or about July 6, 2024, Jason made derogatory remarks about Plaintiff on a near-daily basis to coworkers and others.

21.    On or about July 7, 2024, Jason accessed and printed Plaintiff's personal background history and delivered it to Robinson, while making false statements about Plaintiff to coworkers.

22.    By on or about July 9, 2024, other coworkers had independently reported Jason's conduct toward Plaintiff to Robinson.

23.    On or about July 10, 2024, Robinson spoke with Jason regarding his conduct; however, Defendant took no effective remedial action, and Jason's harassment and retaliation continued.

24.    Jason initiated and spread a false rumor that Plaintiff was using illegal drugs. Jason's ensuing campaign of false accusations and public humiliation was degrading to Plaintiff, was calculated to demean her, and was directed at Plaintiff because of her sex and her rejection of Jason's sexual advances.

25.    On or about September 18, 2024, Plaintiff learned that Jason had been reporting her ordinary movements — such as going to her vehicle to retrieve a beverage — to the General Manager, identified as "Paul" (last name presently unknown to Plaintiff), and falsely suggesting that Plaintiff was engaged in drug use.

26. On or about September 25, 2024, immediately after Plaintiff exited a restroom, Jason rushed into the restroom in order to search for evidence of drug use. He found none.

27. Throughout her employment, Plaintiff repeatedly complained to Robinson about Jason's sexual harassment and the retaliatory hostile work environment. Defendant repeatedly assured Plaintiff that it would address the situation but took no effective remedial action. On at least one occasion several weeks after her initial report, Plaintiff again complained to Robinson about Jason's continuing harassment; Robinson acknowledged that Jason had persisted but took no effective action to stop it.

28. On or about September 26, 2024, Plaintiff notified Robinson by text message that she intended to resign her employment because of Jason's conduct. Robinson persuaded Plaintiff to remain in her employment, promising that he would address the situation. Defendant took no effective remedial action. Plaintiff reasonably relied on Robinson's promise and remained employed. Rather than improving, Plaintiff's working conditions worsened after Robinson's assurance, including through escalating surveillance of Plaintiff and the events of November 20 and 21, 2024.

29. Members of Defendant's management, including General Manager Paul, personally participated in monitoring and surveilling Plaintiff during her

employment, including by following Plaintiff and by directing an assistant manager identified as "Bo" to observe her. On one occasion, when Plaintiff went to the front of the store to obtain information to assist a coworker, Paul publicly demanded to know "what is she doing" in a manner calculated to embarrass Plaintiff in front of others, and thereafter complained about Plaintiff to that coworker's supervisor. Paul undertook this conduct in his capacity as a manager with supervisory authority over Plaintiff.

30.     On or about November 20, 2024, Jason verbally assaulted Plaintiff in front of a customer, falsely and publicly accusing Plaintiff of involvement in a "drug deal gone bad" after a friend of Plaintiff's had left a bag of tools near her vehicle.

31.     Following the November 20, 2024 incident, Defendant sent Plaintiff home early from work while permitting Jason, the aggressor, to remain at work. Being sent home from work, and the disciplinary write-up that followed, were adverse actions that caused Plaintiff harm and that would dissuade a reasonable worker from opposing sexual harassment.

32.     On or about November 21, 2024, Defendant presented Plaintiff with a disciplinary write-up, imposing discipline upon Plaintiff while imposing no comparable discipline upon Jason. Jason's false accusations against Plaintiff, including his false report that Plaintiff was involved in a "drug deal," were

communicated to and relied upon by Defendant's management in deciding to send Plaintiff home and to discipline her. Defendant's adverse actions against Plaintiff were thus the product of Jason's retaliatory animus toward Plaintiff for rejecting his sexual advances.

33. The working conditions that Defendant permitted and imposed were so intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign. The November 21, 2024 disciplinary write-up — issued to Plaintiff but not to Jason, and following Defendant's decision to send Plaintiff home while permitting Jason to remain — was the culminating and final act that compelled Plaintiff's resignation.

34. As a direct and proximate result of the sexual harassment and the retaliatory hostile work environment, and Defendant's failure to remedy them, Plaintiff was constructively discharged and resigned her employment on or about November 21, 2024.

35. At all times material, Defendant knew or should have known of the sexual harassment and retaliation directed at Plaintiff and failed to take prompt and effective remedial action. The harassment occurred openly on Defendant's sales floor and in common work areas in the immediate vicinity of management, recurred on a near-daily basis over a period of approximately five months, was directed at Plaintiff — a full-time employee — in the presence of coworkers and

managers, and consisted of continuous conduct rather than a few isolated or discrete incidents.

## COUNT I

## TITLE VII – SEXUAL HARASSMENT / HOSTILE WORK ENVIRONMENT

36.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 above, as if fully set forth herein.

37.     Plaintiff is a member of a protected class in that she is female.

38.     Plaintiff was subjected to unwelcome harassment, including unwelcome comments of a sexual nature and conduct directed at her because of her sex and her rejection of a male coworker's sexual advances, as set forth above.

39.     The harassment was based on Plaintiff's sex.

40.     The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and created an intimidating, hostile, and abusive working environment, both as Plaintiff subjectively perceived it and as a reasonable person would objectively perceive it.

41.     A basis exists for holding Defendant liable because Defendant knew or should have known of the harassment and failed to take prompt and effective remedial action.

42.     Defendant's conduct constituted unlawful discrimination against Plaintiff on the basis of sex in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1).

43.     Defendant engaged in the foregoing conduct with malice or with reckless indifference to Plaintiff's federally protected rights.

44.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages, including lost wages and benefits, emotional pain and suffering, mental anguish, humiliation, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff, Sarah Hawkshead, respectfully demands judgment against Defendant for: (a) back pay and lost employment benefits; (b) reinstatement to her former position or, in the alternative, front pay and benefits; (c) compensatory damages, including damages for emotional pain and suffering, mental anguish, embarrassment, humiliation, loss of dignity, and loss of enjoyment of life; (d) punitive damages pursuant to 42 U.S.C. § 1981a(b)(1); (e) declaratory and injunctive relief; (f) prejudgment and post-judgment interest as allowed by law; (g) reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k); and (h) such other and further relief as this Court deems just and proper.

## COUNT II

## FLORIDA CIVIL RIGHTS ACT – SEXUAL HARASSMENT / HOSTILE WORK ENVIRONMENT

45.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 above, as if fully set forth herein.

46.    Plaintiff is a member of a protected class in that she is female.

47.    Plaintiff was subjected to unwelcome harassment based on her sex, as set forth above.

48.    The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and created an intimidating, hostile, and abusive working environment, both subjectively and objectively.

49.    A basis exists for holding Defendant liable because Defendant knew or should have known of the harassment and failed to take prompt and effective remedial action.

50.    Defendant's conduct constituted unlawful discrimination against Plaintiff on the basis of sex in violation of the FCRA, section 760.10(1)(a), Florida Statutes, which is construed in conformity with Title VII.

51.    Defendant engaged in the foregoing conduct with malice or with reckless indifference to Plaintiff's protected rights.

52.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages, including lost wages and benefits, emotional pain and suffering, mental anguish, humiliation, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff, Sarah Hawkshead, respectfully demands judgment against Defendant for: (a) back pay and lost employment benefits; (b) reinstatement to her former position or, in the alternative, front pay and benefits; (c) compensatory damages, including damages for emotional pain and suffering, mental anguish, embarrassment, humiliation, loss of dignity, and loss of enjoyment of life; (d) punitive damages pursuant to section 760.11(5), Florida Statutes; (e) declaratory and injunctive relief; (f) prejudgment and post-judgment interest as allowed by law; (g) reasonable attorneys' fees and costs pursuant to section 760.11(5), Florida Statutes; and (h) such other and further relief as this Court deems just and proper.

## COUNT III

### TITLE VII – RETALIATORY HOSTILE WORK ENVIRONMENT

53.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 above, as if fully set forth herein.

54.    Plaintiff engaged in statutorily protected activity, including by opposing and reporting to Defendant's management sexual harassment and retaliation, and by reporting to Mike Robinson that Jason was sexually harassing her and retaliating against her for her rejection of his sexual advances.

55.    After and because of Plaintiff's protected activity, Plaintiff was subjected to a hostile work environment consisting of false accusations,

surveillance, public humiliation, and other conduct that was sufficiently severe or pervasive to alter the terms and conditions of her employment.

56.    There is a causal connection between Plaintiff's protected activity and the retaliatory hostile work environment, including the close temporal proximity between Plaintiff's complaints and the retaliatory conduct, which continued and escalated each time Plaintiff complained.

57.    A basis exists for holding Defendant liable because Defendant knew or should have known of the retaliatory conduct and failed to take prompt and effective remedial action.

58.    Defendant's conduct constituted unlawful retaliation against Plaintiff in violation of Title VII, 42 U.S.C. § 2000e-3(a).

59.    Defendant engaged in the foregoing conduct with malice or with reckless indifference to Plaintiff's federally protected rights.

60.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages, including lost wages and benefits, emotional pain and suffering, mental anguish, humiliation, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff, Sarah Hawkshead, respectfully demands judgment against Defendant for: (a) back pay and lost employment benefits; (b) reinstatement to her former position or, in the alternative, front pay and benefits;

(c) compensatory damages, including damages for emotional pain and suffering, mental anguish, embarrassment, humiliation, loss of dignity, and loss of enjoyment of life; (d) punitive damages pursuant to 42 U.S.C. § 1981a(b)(1); (e) declaratory and injunctive relief; (f) prejudgment and post-judgment interest as allowed by law; (g) reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k); and (h) such other and further relief as this Court deems just and proper.

## COUNT IV

## FLORIDA CIVIL RIGHTS ACT – RETALIATORY HOSTILE WORK ENVIRONMENT

61.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 above, as if fully set forth herein.

62.     Plaintiff engaged in statutorily protected activity, including by opposing and reporting to Defendant's management sexual harassment and retaliation, as set forth above.

63.     After and because of Plaintiff's protected activity, Plaintiff was subjected to a hostile work environment that was sufficiently severe or pervasive to alter the terms and conditions of her employment.

64.     There is a causal connection between Plaintiff's protected activity and the retaliatory hostile work environment, including the close temporal proximity between Plaintiff's complaints and the retaliatory conduct.

65.     A basis exists for holding Defendant liable because Defendant knew or should have known of the retaliatory conduct and failed to take prompt and effective remedial action.

66.     Defendant's conduct constituted unlawful retaliation against Plaintiff in violation of the FCRA, section 760.10(7), Florida Statutes.

67.     Defendant engaged in the foregoing conduct with malice or with reckless indifference to Plaintiff's protected rights.

68.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages, including lost wages and benefits, emotional pain and suffering, mental anguish, humiliation, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff, Sarah Hawkshead, respectfully demands judgment against Defendant for: (a) back pay and lost employment benefits; (b) reinstatement to her former position or, in the alternative, front pay and benefits; (c) compensatory damages, including damages for emotional pain and suffering, mental anguish, embarrassment, humiliation, loss of dignity, and loss of enjoyment of life; (d) punitive damages pursuant to section 760.11(5), Florida Statutes; (e) declaratory and injunctive relief; (f) prejudgment and post-judgment interest as allowed by law; (g) reasonable attorneys' fees and costs pursuant to section

760.11(5), Florida Statutes; and (h) such other and further relief as this Court deems just and proper.

## COUNT V

## <u>TITLE VII – RETALIATION – CONSTRUCTIVE DISCHARGE</u>

69.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 above, as if fully set forth herein.

70.     Plaintiff engaged in statutorily protected activity, including by opposing and reporting to Defendant's management sexual harassment and retaliation, as set forth above.

71.     After and because of Plaintiff's protected activity, Defendant subjected Plaintiff to materially adverse employment actions, including a course of retaliatory conduct and disparate discipline that culminated in Plaintiff's constructive discharge on or about November 21, 2024. The retaliatory conduct would have dissuaded a reasonable worker from making or supporting a charge of discrimination.

72.     There is a causal connection between Plaintiff's protected activity and the materially adverse actions culminating in her constructive discharge.

73.     Defendant's conduct constituted unlawful retaliation against Plaintiff in violation of Title VII, 42 U.S.C. § 2000e-3(a).

74. Defendant engaged in the foregoing conduct with malice or with reckless indifference to Plaintiff's federally protected rights.

75. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages, including lost wages and benefits, emotional pain and suffering, mental anguish, humiliation, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff, Sarah Hawkshead, respectfully demands judgment against Defendant for: (a) back pay and lost employment benefits; (b) reinstatement to her former position or, in the alternative, front pay and benefits; (c) compensatory damages, including damages for emotional pain and suffering, mental anguish, embarrassment, humiliation, loss of dignity, and loss of enjoyment of life; (d) punitive damages pursuant to 42 U.S.C. § 1981a(b)(1); (e) declaratory and injunctive relief; (f) prejudgment and post-judgment interest as allowed by law; (g) reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k); and (h) such other and further relief as this Court deems just and proper.

## COUNT VI

## **FLORIDA CIVIL RIGHTS ACT – RETALIATION – CONSTRUCTIVE DISCHARGE**

76. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 above, as if fully set forth herein.

77.     Plaintiff engaged in statutorily protected activity, including by opposing and reporting to Defendant's management sexual harassment and retaliation, as set forth above.

78.     After and because of Plaintiff's protected activity, Defendant subjected Plaintiff to materially adverse employment actions, including a course of retaliatory conduct and disparate discipline that culminated in Plaintiff's constructive discharge on or about November 21, 2024.

79.     There is a causal connection between Plaintiff's protected activity and the materially adverse actions culminating in her constructive discharge.

80.     Defendant's conduct constituted unlawful retaliation against Plaintiff in violation of the FCRA, section 760.10(7), Florida Statutes.

81.     Defendant engaged in the foregoing conduct with malice or with reckless indifference to Plaintiff's protected rights.

82.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages, including lost wages and benefits, emotional pain and suffering, mental anguish, humiliation, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff, Sarah Hawkshead, respectfully demands judgment against Defendant for: (a) back pay and lost employment benefits; (b) reinstatement to her former position or, in the alternative, front pay and benefits;

(c) compensatory damages, including damages for emotional pain and suffering, mental anguish, embarrassment, humiliation, loss of dignity, and loss of enjoyment of life; (d) punitive damages pursuant to section 760.11(5), Florida Statutes; (e) declaratory and injunctive relief; (f) prejudgment and post-judgment interest as allowed by law; (g) reasonable attorneys' fees and costs pursuant to section 760.11(5), Florida Statutes; and (h) such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

83.    Plaintiff hereby demands a trial by jury on all issues so triable as of right.

Dated: July 21, 2026.

Respectfully submitted,

/s/ Frank M. Malatesta
**Frank M. Malatesta, Esq.**
Florida Bar No. 0097080
MALATESTA LAW OFFICE
871 Venetia Bay Blvd., Suite 235
Venice, Florida 34285
Telephone: (941) 256-3812
Fax: (888) 501-3865
Frank@malatestalawoffice.com
heather@malatestalawoffice.com
Staff@malatestalawoffice.com
*Attorney for Plaintiff*